FILED

2:51 pm, 10/19/11

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
|    LICIA HENDERSON, | ) | Case No. 09-20341 |
| | ) | Chapter 7 |
|                 Debtor. | ) | |
| | ) | |
| CHARLES F. MCVAY, United | ) | |
| States Trustee, | ) | |
| | ) | |
|                Plaintiff, | ) | |
| v. | ) | Adv. No. 10-2018 |
| | ) | |
| LICIA HENDERSON, | ) | |
| | ) | |
|              Defendant. | ) | |

## OPINION ON COMPLAINT

On June 22, 2011, this adversary proceeding came before the court for trial on the United States Trustee's ("UST") Complaint for Revocation of the Debtor's Discharge and the answer filed by Licia Henderson ("Debtor"). The plaintiff was represented by Daniel Morse and the defendant appeared with her counsel, Stephen Winship. The court has considered the testimony and other evidence, the arguments of the parties and applicable law and is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this complaint under 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding under § 157(b)(2)(J).

**Findings of Fact**

The Debtor testified that she had purchased a house in April 2007. By May, she was experiencing pain in her lungs and deterioration of her physical condition. After performing a "home test" on the walls and discussions with her neighbors and the Department of Criminal Investigation, she discovered the house had previously been a "meth" house. The chemicals that were used to manufacture the drug were present in the walls of the house. She moved out of the house on May 8, 2007. At that same time she had a home in New Mexico and was making mortgage payments on both houses. She began experiencing anxiety, depression, increased seizures and headaches due to the financial stress. The seizures were a pre-existing condition that were controlled by medications. The Debtor began to experience more seizures as the panic and stress decreased the effects of her seizure medication.

The Debtor began treatment with Dr. J. Herter and Dr. J. Swedberg. Dr. Herter testified that he first began treating the Debtor on February 3, 2009 and prescribed her medications. Her behavioral presentation was "highly anxious, depressed, high level of stress and emotional." The Debtor reported to Dr. Herter that she was having problems with memory, concentration, sleep disturbance, chest pain, shortness of breath, instability with co-workers and close personal relationships, could not cope and was overwhelmed. He diagnosed her with anxiety and major depressive disorder. The Debtor was prescribed sertraline and lamictal. Dr. Herter testified that both medications affect memory and concentration. On February 2009, the Debtor was also prescribed lorazepam and lexapro

which significantly impairs short term memory. Dr. Herter explained that the memory in is the brain but it cannot be retrieved.

The Debtor filed her voluntary chapter 7 bankruptcy petition and other documents necessary to commence a chapter 7 bankruptcy case on April 24, 2009, Case No. 09-20341. On Schedule B, she listed under "Cash on hand" the amount of "nominal." Gary A. Barney ("Trustee") was appointed as the interim Chapter 7 trustee. The Debtor appeared at her §341 meeting of creditors on June 19, 2009. At the meeting of creditors, the Debtor was examined under oath by the Trustee and Michele Hankins, who was then the Assistant United States Trustee for the District of Wyoming. The Debtor did not disclose her possession of the $5,000.00 cash which she had placed in her night stand in October 2008. The last day to object to debtor's discharge was August 18, 2009. The court entered its order granting the Debtor's discharge on August 21, 2009.

Prior to filing for bankruptcy protection the Debtor was involved in litigation regarding the purchase of the "meth" house: *Licia Henderson v. Monte L. Johnson, Marrolyce Goodman, Arrow Realty Company, Kathleen Petty-Lucht, Stratton Real Estate Company, Kim Perry and Mark Yeager, d.b.a. Trauma Clean Specialists of Wyoming*, Civil Action No. 881010, in the Seventh District Court for the State of Wyoming. As part of that litigation, the Debtor was deposed in June 2010 by Keith R. Nachbar, Esq. During the deposition she disclosed she had $5,000.00 in her night stand.

Debtor testified that she immediately turned the $5,000.000 over to the Trustee for administration in her bankruptcy estate. On June 17, 2010, the Debtor amended her bankruptcy petition to disclose the $5,000.00 cash.

Page 3

**Discussion**

The UST moves to revoke Debtor's discharge under 11 U.S.C. § 727(d)(1)[1] and (e), and Fed. R. Bankr. P. 9024 and 7001(4) and (9).

The Federal Rules of Bankruptcy Procedure permit the United States Trustee to request revocation of a discharge within one year after the discharge is granted, on the grounds of fraud.[2] The Debtor's discharge was entered on August 21, 2009. The UST filed this adversary proceeding on August 10, 2010. The complaint to revoke the Debtor's discharge was timely filed.

The court shall revoke a discharge already granted in certain circumstances under § 727(d)(1) which states,

> "the court shall revoke a discharge granted under subsection (a) of this section if...such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge."

The UST has the burden of proof based upon a preponderance of the evidence.[3] Revocation of discharge is an extraordinary remedy which is available only in limited circumstances. The § 727(d) revocation provisions must be construed liberally in favor of the debtor and against the party seeking revocation. Once the movant produces enough evidence to sustain this burden, the burden then shifts to the defendant to explain his or

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 Of the United States Code.

[2] Fed. R. Bankr. P. 9024

[3] *In re Webster d/b/a/ Photography Unlimited*, Civil Action No. 91-A-476, 1991 U.S. Dist. LEXIS 21681 (D.Colo., November 18, 1991) *citing Grogen v. Garner*, 498 U.S. 270 (1991).

Page 4

her actions. The plaintiff always bears the ultimate burden of proving the essential elements of an alleged objection to discharge. While the law generally favors discharges in bankruptcy, the Bankruptcy Code should be construed to protect the debtor only in those cases where there is no intent to violate its provisions. A discharge is reserved for "the honest but unfortunate debtor" and predicated on full and accurate disclosure of all material.[4]

"To revoke a discharge under §727(d), a debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known."[5] Because courts recognize that a debtor will be reluctant to admit that he was motivated by fraud, they have permitted fraudulent intent to be inferred from circumstantial evidence or a course of conduct. The existence of a fraudulent intent is most often betrayed by an examination of a course of conduct.[6]

To determine whether the debtor acted with actual fraudulent intent in transferring away or concealing a valuable asset prior to the voluntary bankruptcy filed, the court looks to the Debtor's conduct and circumstances recognized as the "badges of fraud." These include (1) lack or inadequacy of consideration; (2) the family, friendship or close associates' relations between the parties; (3) the retention or possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both

---

[4] *In re Gratsch*, (Case No. 05-47559, Ad. Pro. No. 07-2029, 2010 Bankr. LEXIS 2876 (Bankr. D. N.J., August 25, 2010).

[5] *Webster, supra* at 11, citing *In re Edmonds*, 924 F.2d 176 (10th Cir. 1991).

[6] *Gratsch* at 9.

before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transaction or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suits by creditors; and, (6) the general chronology of events and transactions under inquiry.[7]

In the case before the court, the UST alleges that (1) the Debtor's discharge was obtained through fraud; (2) such fraud consisted of the failure to disclose the $5,000.00 that the Debtor had stashed in her night stand; (3) this interest was substantial; and (4) the UST did not learn of such fraud until after the Debtor's discharge was entered and she was being deposed in a separate civil action. The Debtor admits that (1) she received her discharge; (2) that she failed to disclose the $5,000.00 that she had placed in her night stand prior to filing her bankruptcy case; and, (3) the $5,000.00 is a substantial asset for the estate.

As for the last element, the Debtor argued that the UST should have known that the Debtor did not disclose the asset by conducting a more thorough investigation into the Debtor's bank records. The court does not agree with this argument. Peter Gullicks testified regarding the UST's procedures for the review of a case. The Debtor's argument requires over and above what should be required of an "honest but unfortunate debtor" seeking protection under the Bankruptcy Code. The Debtor's testimony revealed that her suppressed memory was only triggered under the intense questioning at the deposition.

---

[7] *In re Zembko*, 367 B.R. 253, 257 (Bankr. D. Conn. 2007).

The Debtor's discharge was entered on August 21, 2009. The deposition occurred in June 2010. The UST did not learn of the Debtor not disclosing the asset until after her discharge was entered.

The burden then shifts to the Debtor to explain her actions, or in this case, her failure to disclose the $5,000.00 asset. The Debtor and Dr. Herter testified regarding the prescription medication that she was taking during the period of time prior to filing for bankruptcy and the effects on the Debtor's memory. The Debtor also testified that upon her memory being triggered by the questioning at the deposition and remembering the $5,000.00 stashed in the night stand, she immediately amended her Schedule B and turned the funds over to the chapter 7 trustee.

The court in reviewing the "badges of fraud" finds that there was not a transfer of assets. The Debtor retained possession of the funds, but did not spend the money. She did not appear to have been in any better financial position for having retained the funds for nearly two years. The funds sat unused in the Debtor's night stand. The court does not find that evidence was presented providing a series of transactions or course of conduct that shows she attempted to hide money previously. The court finds Debtor's claim, that she forgot about the $5,000.00, credible based upon her testimony and admissions. The court, in considering the chronology of events that began with the purchase of the "meth" house, compounded by her physical and financial conditions, lead to her inability to remember and failure to disclose her possession of the $5,000.00.

The court finds that the UST did not carry its burden of proving, by a preponderance of the evidence, that the Debtor committed fraud. The court will enter a judgment against the UST on his § 727(d) claim for relief.

DATED this ___19___ day of October, 2011.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
Stephen Winship
Dan Morse